UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA

JABARI TRUITT,                )
                              )
           Plaintiff,         )
                              )
vs.                           )    1:11-cv-1227-JMS-MJD
                              )
INDIANAPOLIS HOUSING          )
AGENCY,                       )
                              )
           Defendant.         )

**Entry Discussing Motion for Summary Judgment**

Jabari Truitt sued his former employer, the Indianapolis Housing Agency (IHA), for (1) intentional infliction of emotional distress, (2) violation of the Americans with Disabilities Act, and (3) retaliation for filing a worker's compensation claim. IHA seeks resolution of the claims alleged against it through summary judgment.

For the reasons explained below there are no genuine issues of material fact related to any of Truitt's claims and IHA's motion for summary judgment [65] is **granted.**[1]

### I. Standard of Review

The motion for summary judgment in this civil rights action, as with any such motion, must be granted Aif the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A "material fact" is one that "might affect the outcome of the suit." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute is genuine only if a reasonable jury could find for the non-moving party. *Id.* If no reasonable jury could find for the non-moving party, then there is no Agenuine@ dispute. *Scott v. Harris,* 127 S.Ct. 1769, 1776 (2007). "[A] party seeking summary judgment always

---

[1] The defendant's motion to strike [78] is **denied.** Local Rule 56-1(i) specifically disfavors motions to strike in the summary judgment process. The motion to strike is unnecessary as the arguments raised could have been sufficiently stated in a reply brief. The untimeliness of the plaintiff's response in opposition to the motion for summary judgment is excused.

bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). A[T]he burden on the moving party may be discharged by 'showing'--that is, pointing out to the district court--that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. AIf the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party.@ *Ortiz v. John O. Butler Co.*, 94 F.3d 1121, 1124 (7th Cir. 1996), *cert. denied*, 519 U.S. 1115 (1997).

AIn evaluating a motion for summary judgment, a court should draw all reasonable inferences from undisputed facts in favor of the nonmoving party and should view the disputed evidence in the light most favorable to the nonmoving party.@ *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008) (citations omitted).

## II.  Statement of Facts

Truitt has opposed the motion for summary judgment, but his response is inadequate to create a genuine issue of material fact. Local Rule 56-1(b) requires a brief in opposition to a motion for summary judgment to include a section labeled AStatement of Material Facts in Dispute@ which responds to the movant=s asserted material facts by identifying the potentially determinative facts and factual disputes which the nonmoving party contends demonstrate that there is a dispute of fact precluding summary judgment. These facts must be supported by appropriate citations to admissible evidence. See Local Rule 56-1(e). Although we construe pro se filings liberally, pro se litigants are not exempt from procedural rules. *Pearle Vision, Inc. v. Romm*, 541 F.3d 751, 758 (7th Cir. 2008); s*ee also Greer v. Bd. of Educ., of the City of Chicago,* 267 F.3d 723, 727 (7th Cir. 2001); *Members v. Paige,* 140 F.3d 699, 702 (7th Cir. 1998) (stating that procedural rules "apply to uncounseled litigants and must be enforced").

Truitt=s failure to properly oppose the motion for summary judgment with a statement of material facts in dispute supported by admissible evidence has a particular consequence, which is that he has admitted the truth of the defendant's statement of material facts for purposes of the court acting on the motion for summary judgment. See *Johnson v. Gudmundsson,* 35 F.3d 1104, 1108 (7th Cir. 1994). This is the result of Local Rule 56-1(f), of which Truitt was notified. This does not alter the standard for assessing a Rule 56 motion, but does Areduc[e] the pool@ from which the facts and inferences relative to such a motion may be drawn. *Smith v. Severn,* 129 F.3d 419, 426 (7th Cir. 1997). The undisputed material facts are as follows:

IHA is an agency responsible for performing the public housing functions in Indianapolis and Marion County, including administering Section 8 low-income housing.

Truitt worked for IHA as a Task Coordinator for Inspections, and part of his job was to inspect Section 8 homes. Truitt was first hired by IHA as a housing inspector on June 7, 2007. On October 6, 2008, Truitt was promoted to the position of Task Coordinator. During his time as both a Housing Inspector and as a Task Coordinator, Truitt conducted on-site housing inspections for IHA. As a Housing Inspector, Truitt performed about fifteen inspections each day. As a Task Coordinator, Truitt continued to do inspections as part of his job.

On September 25, 2009, Truitt fell through a set of stairs during a housing inspection, damaging his hip. The incident was an accident, not caused by anyone at IHA. Truitt was disabled as a result of this injury. Truitt returned to work after his initial injury and worked until June of 2010, when he complained of pain resulting from the fall that had occurred nine months prior.

Subsequent to notifying IHA of pain relating to his fall, Truitt underwent further medical evaluations and procedures. He was on medical leave from August 23, 2010, until September 24, 2010, during which time he did not work at all. Truitt was placed on medical leave again from September 28, 2010 until December 17, 2010, for two surgeries.

Truitt's doctor released him to return to work in December of 2010, but only for four-hour days. Truitt was cleared to work full time on February 15, 2011, by Dr. Kevin Sigua. At that time, Truitt's work was limited by a number of restrictions: no lifting greater than 35 pounds, no pushing or pulling exceeding 75 pounds, no repetitive lifting, twisting, or bending, and sitting or standing must be limited to less than 30 minutes. When Truitt returned to work in December of 2010, he could not perform the essential functions of the Task Coordinator position as defined by his written job description, including completing annual, quality control, complaint and special inspections. Truitt admitted that he could not perform these inspections. In addition, Task Coordinators need to have the ability to drive in order to travel to sites for inspections. Truitt also admitted that because of his disability he could drive neither a work vehicle nor his personal vehicle.

IHA's human resources personnel communicated with Truitt regarding accommodating his disability when he returned to work, both in September and in December. IHA has an employee handbook that provides a method through which disabled employees are able to obtain reasonable accommodations. Truitt recalled receiving the handbook. Truitt also acknowledged that he looked at the handbook to see the agency's policies concerning the Americans with Disabilities Act.

During his initial August-September of 2010 absence, IHA was informed of Truitt's request for a new chair to assist him in performing his job. On September 23, 2010, Kathy Walden, director of human resources for IHA, spoke with Holly Bogue, the claims manager for Truitt's Workmen's Compensation claim. Bogue informed Walden of Truitt's request for a specialized, elevated chair to assist him in sitting for prolonged periods. IHA staff took measurements for the chair on September 27, 2010. Bogue next contacted IHA with the specifications for the new chair on November 19, 2010. The chair was ordered by and paid for by IHA on the same day. The chair arrived on November 24, 2010, and it was kept in Walden's office until Truitt returned to work in December.

When Truitt returned to work in December of 2010, the specialized chair did not alleviate Truitt's discomfort. He discussed the chair with his doctor, and his doctor was not able to identify any other furniture that would better accommodate Truitt's disability. Truitt testified that no chair, regardless of construction, would have worked as an accommodation or allowed him to perform the essential functions of his job. IHA also moved Truitt's workspace so that he would be closer to the restroom facilities, in an attempt to further accommodate him. In addition, IHA modified the desk in Truitt's new office area by raising the screen and keyboard, so that they would be functional with the specialized chair provided to Truitt, and IHA arranged to have other employees bring work to Truitt's desk so he would not have to walk to get work.

When Truitt still could not perform the essential functions of his job, despite the new chair and new workstation, IHA offered Truitt a transfer to a Task Coordinator for Intake and Admissions position, the essential functions of which he could perform with his restrictions. If he transferred, Truitt would remain a Task Coordinator and his pay would stay the same, but he would not have to drive or do inspections. IHA also offered to have someone assist with bringing Truitt his files, so that he would not have to walk or lift as much if he transferred. Truitt was told that IHA would provide him with training for his new responsibilities, if he transferred. Truitt rejected the Task Coordinator for Intake and Admissions position. Truitt refused the new position in an email he stated that he had "decided to stay as a Task Coordinator of Inspection." In that email, he provided a list of clerical tasks he claimed to be doing. However, IHA needed its Task Coordinator for Inspections to perform inspections, and it could not agree to pay Truitt as a Task Coordinator if he was only doing clerical work.

After Truitt refused the Task Coordinator of Intake and Admissions position, IHA offered Truitt a list of available job openings at IHA for which he could apply. The list contained job descriptions and salaries of open positions at IHA, and Truitt was told that he could apply for any position for which he met the minimum

requirements. Truitt refused to accept the list offered to him and did not investigate or apply for any of the available positions.

### III.  Discussion

Truitt asserts three claims: (1) intentional infliction of emotional distress, (2) violation of the Americans with Disabilities Act, and (3) retaliation for filing a worker's compensation claim. He claims IHA intentionally caused Truitt emotional distress by denying Truitt an accommodation and failing to pay medical expenses during his employment at IHA. He claims the IHA violated the ADA by discriminating against him on the basis of the disability that stems from his fall. He claims that IHA retaliated against him by terminating his employment prior to his undergoing an independent examination on April 15, 2011, by a physician appointed by the Worker's Compensation Board. Jurisdiction over the ADA claim exists through 28 U.S.C. § 1331 and over the two pendent state law claims pursuant to 28 U.S.C. § 1367(a). [2]

### A.   Intentional Infliction of Emotional Distress

To prove his claim of intentional infliction of emotional distress, Truitt must establish that "the defendant: (1) engage[d] in extreme and outrageous conduct (2) which intentionally or recklessly (3) cause[d] (4) severe emotional distress to [the defendant]." *Curry v. Whitaker*, 943 N.E.2d 354, 361 (Ind. Ct. App. 2011). Liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bradley v. Hall*, 720 N.E.2d 747, 753 (Ind. Ct. App. 1999). Truitt's allegations, even if true, do not rise to the level of intentional infliction of emotional distress. There is simply no evidence of any conduct that could constitute intentional infliction of emotional distress and IHA is entitled to judgment as a matter of law on this claim.

### B.   Americans with Disabilities Act

---

[2] A[W]hen deciding to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons,* 522 U.S. 156, 173 (1997)(quoting *Carnegie-Mellon Univ. v. Cohill,* 484 U.S. 343, 350 (1988)). The Court of Appeals has "recognized that the interest in judicial economy compels a court to retain jurisdiction over state claims when substantial resources already have been committed to deciding them, or when there is no doubt about how those claims should be decided," *Taflinger v. U.S. Swimming, Inc.*, 435 F. App'x 559, 562 (7th Cir. 2011)(citing cases), and that is precisely the situation here as to each of Truitt's pendent state law claims.

The Americans with Disabilities Act (ADA) provides, "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to . . . discharge of employees . . . and other terms, conditions, and privileges of employment." 42 U.S.C. 12112(a). A "qualified individual" is defined by the Act as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. 12111(8).

The undisputed evidence reflects that when he was terminated, Truitt was unable to perform the essential functions of his job as a Task Coordinator for Inspections, with or without reasonable accommodations, so he was not a "qualified individual" under the ADA. For example, the IHA Task Coordinator was required to inspect houses, drive a vehicle and interact in person with the public on a regular basis. Truitt could not perform these essential functions with or without a reasonable accommodation. In addition, Truitt refused to consider alternative positions which were open at IHA for a possible transfer and he declined an offer to transfer to a new position within IHA as the Task Coordinator for Intake and Admissions. There is also no evidence that Truitt engaged in an interactive process to evaluate potential accommodations.

Under these circumstances, IHA is entitled to judgment as a matter of law because there is no evidence which would support a claim of discrimination under the ADA.

### C.  Retaliation for Filing a Worker's Compensation Claim

Truitt alleges that he was retaliated against for seeking the assistance of the Worker's Compensation Board. Retaliation claims based on filing a worker's compensation claim were recognized as actionable by the Indiana Supreme Court in *Frampton v. Central Ind. Gas Co.*, 297 N.E.2d 425 (Ind. 1973). In *Frampton*, the court held that a plaintiff who demonstrates that he or she was discharged by an employer for filing a claim under Indiana's Workmen's Compensation Act "has stated a claim upon which relief can be granted." *Frampton*, 297 N.E.2d at 428. The court recognized that "under ordinary circumstances, an employee at will may be discharged without cause," but "when an employee is discharged solely for exercising a statutorily conferred right an exception to the general rule must be recognized." Id. at 428. To succeed on a claim of retaliatory discharge, a plaintiff "must present evidence that directly or indirectly implies the necessary inference of causation between the filing of a worker's compensation claim and the termination, such as proximity in time or evidence that the employer's asserted lawful reason for discharge is a pretext." *Dale v. J.G. Bowers, Inc.*, 709 N.E.2d 366, 369 (Ind. Ct. App. 1999); *see also Smeigh v. Johns Manville, Inc.*, 643 F.3d 554, 560 (7th Cir. 2011).

There is no evidence to support Truitt's retaliation claim based on his worker's compensation. The undisputed facts reflect that Truitt was terminated for non-retaliatory reasons, and his filing of a worker's compensation claim did not motivate his eventual termination.

IHA allowed Truitt to take time off for medical procedures and recuperation. IHA paid Truitt's medical expenses in relation to his worker's compensation claim. IHA paid over one-hundred thousand dollars of medical expenses related to Truitt's worker's compensation. Truitt was welcomed back to IHA in December of 2010 and allowed to work modified duty and half-days in response to work restrictions put in place by his physician. IHA offered Truitt lighter duty work when they offered him the position of Task Coordinator of Intake and Admission. Truitt declined the offer of lighter duty work. In addition, Truitt has also been unable to find a job since he was terminated from IHA, demonstrating the long-term nature of Truitt's disability. Taken together, the evidence reflects that Truitt was terminated because he could not perform the essential functions of his job and not because he filed a worker's compensation claim. There is simply no evidence connecting Truitt's discharge to the filing of his worker's compensation claim.

## IV. Conclusion

Truitt has not identified a genuine issue of material fact as to his claims against IHA. *Liberles v. County of Cook,* 709 F.3d 1122, 1126 (7th Cir. 1983) ("It is a well-settled rule that a party opposing a summary judgment motion must inform the trial judge of the reasons, legal or factual, why summary judgment should not be entered."). IHA's motion for summary judgment is therefore **granted.** Judgment consistent with this Entry shall now issue.

**IT IS SO ORDERED.**

Date: 12/19/2012

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution:**

All Electronically Registered Counsel

JABARI TRUITT
5441 Kelvington Lane
Indianapolis, IN 46254